<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

TESLA GUARDADO,

     Plaintiff,

     v.

KISS DISTRIBUTION CORP., JUSTIN KUK,
and JOHN DOE,

     Defendants.

No. 25cv649 (EP) (JRA)

**OPINION**

**PADIN, District Judge.**

Plaintiff Tesla Guardado brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–e-17 ("Title VII"), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1–50 ("LAD"), against Defendants Kiss Distribution Corp. ("Kiss"), Justin Kuk, and John Doe, also known as "Eduardo." D.E. 22 ("Amended Complaint" or "FAC"). Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Guardado's Title VII and LAD claims for retaliation and retaliatory hostile work environment against all Defendants, as well as Guardado's LAD claims against Kuk. D.E. 30-1 ("Motion" or "Mot.").[1] Guardado opposes their Motion. D.E. 36 ("Opposition" or "Opp'n"). Defendants reply. D.E. 37 ("Reply").

The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, the Court will **DENY** the Motion.

---

[1] Defendants filed their notice of motion at D.E. 30.

## I.    BACKGROUND

### A.    Factual Background[2]

Guardado, a New Jersey resident, has been employed by Kiss as a package handler at its Piscataway facility since April 2021.  FAC ¶¶ 9, 11.  Kiss owns and operates the Piscataway facility.  *Id.* ¶ 18.  Kuk and Eduardo, both New Jersey residents, held positions senior to Guardado's.  *Id.* ¶¶ 13–14, 25, 33.  Kuk, however, was the "highest in command as manager of the warehouse."  Mot. at 10 (citing FAC ¶ 27).  During Guardado's employment, Kuk supervised all employees assigned to the Piscataway facility.  FAC ¶¶ 27–29.  He had hiring, firing, and disciplinary authority, the ability to determine Guardado's schedule and duties, the ability to direct others to assign Guardado duties, and the authority to evaluate her performance.  *Id.* ¶ 30.  He also supervised Guardado on a day-to-day basis.  *Id.*

Eduardo was responsible for delivering plastic boxes to package handlers like Guardado and for assigning tasks to them.  *Id.* ¶ 35; *see id.* ¶ 11.  Eduardo and Kuk were friends.  *Id.* ¶ 40.  Between May 2023 and January 2024, Eduardo repeatedly sexually harassed Guardado while at work.  *Id.* ¶¶ 52, 57–58.  His conduct included masturbating during his shift in May 2023 and telling Guardado (in Spanish) "You have a nice ass!", "Your ass looks good to make love to!", "That vagina looks good . . . I would like to taste it!", and "If your husband isn't giving you the good sex, it could be me who will give it to you."  *Id.* ¶ 53.  Eduardo would also frequently leer at Guardado and say "Que rica!" (meaning "How delicious!") and would, on a regular basis, "accidental[ly]" stumble into her and touch her.  *Id.*  Eduardo also asked Guardado out on a date, despite Guardado consistently rejecting his sexual advances.  *Id.*

---

[2] For the purpose of the Motion, the Court accepts the factual allegations of the Amended Complaint as true and draws all inferences in the light most favorable to Guardado.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

2

Eduardo would also sexually harass Guardado's female coworkers, Kersey and Irlanda. *Id.* ¶ 60. Eduardo would sexually harass them in front of supervisors while on the warehouse floor. *Id.* ¶ 66. Because no supervisor interfered and because Eduardo was friends with various supervisors, Guardado was initially reluctant to complain. *Id.* ¶ 66. Indeed, Eduardo bad-mouthed Guardado and her performance to some of her supervisors, Alia and Genesis, after Guardado rejected his sexual advances.[3] *Id.* ¶¶ 67–69. As a result of Eduardo's complaints, Alia and Genesis reprimanded Guardado. *Id.* ¶ 70.

Guardado finally complained to a bilingual coworker, Alexandra, and asked her to convey her complaints to Kuk. *Id.* ¶¶ 73–74. In response, Kuk told Alexandra that he "did not want to deal with it." *Id.* ¶ 74. Guardado thereafter continued to endure harassment from Eduardo and reprimands from Alia and Genesis. *See id.* ¶ 77. Guardado then complained again on July 6, 2023 to human resources. *Id.* ¶ 78. During her meeting with human resources, Guardado detailed Eduardo's sexual harassment and her supervisors' conduct in reprimanding her and in ignoring Eduardo's conduct. *Id.* ¶¶ 79–81. After no one from human resources investigated Guardado's complaints or followed up with her, Guardado returned to human resources, where she was told that there was nothing they could do because they had forwarded the matter to Kuk and it was therefore "out of [their] hands." *Id.* ¶¶ 84–88. Because nothing was done, Guardado had to continue working with Eduardo. *See id.* ¶ 89.

Alia and Kuk then began singling Guardado out for talking too much, even though other workers also spoke while on the warehouse floor and even though Eduardo continued to sexually harass Guardado. *Id.* ¶¶ 93–95. On January 8, 2024, Guardado discovered that someone had

---

[3] Guardado mentions many coworkers and supervisors by first name but does not include their full names.

drawn a phallus into the frost on her car's windshield, along with the words (in Spanish) "I LIKE PENIS." *Id.* ¶¶ 97–98. On January 11, 2024, the next time that Guardado was at work, she complained to Genesis about the defacement of her car. *See id.* ¶¶ 99–105. Guardado asked Genesis to review the parking lot footage with Kuk. *Id.* ¶ 106. Kuk took no action and Genesis informed Guardado that Kuk instructed her to "take the matter up with HR." *Id.* ¶¶ 107–09. No one at Kiss acted. *Id.* ¶ 110.

Because Guardado lost faith in Kiss's ability to remedy any sexual harassment, she called the police. *Id.* ¶¶ 110–12. On January 12, 2024, Guardado spoke with human resources and again reiterated her prior complaints about Eduardo. *Id.* ¶¶ 117–18. Human resources again told her they would investigate. *Id.* ¶¶ 121–24. Even after this latest complaint, Guardado was still forced to continue working with Eduardo. *Id.* ¶¶ 125–29. Alia and Kuk also refused to speak to her and directed Guardado's coworkers not to speak with her either. *Id.*

On January 24, 2024, Guardado met with human resources again to review the parking lot footage. *Id.* ¶ 130. The footage showed that Eduardo had defaced Guardado's vehicle. *Id.* ¶ 131. When Guardado requested the footage, human resources told her that they could only provide it to the police, but that the police could then provide it to her. *Id.* ¶¶ 132–33. However, when the police requested the footage from human resources, human resources told them that they could not provide it. *Id.* ¶ 135. Eventually, and despite Kuk's objections, Kiss terminated Eduardo. *Id.* ¶¶ 139–40.

Following Eduardo's termination, Kuk and Alia began assigning Guardado the task of lifting heavy boxes, something she had never been required to previously do. *Id.* ¶ 144. Kuk threatened to terminate Guardado for arriving late to work, even though other employees at the Piscataway facility regularly clocked in late. *Id.* ¶¶ 144–47, 150. Guardado also noticed that when

4

other employees came into work late, her supervisors would record their excuses into Kiss's internal system but would leave the entries for Guardado blank even though she provided valid excuses. *Id.* ¶¶ 148–49. For example, two of Guardado's coworkers, Lydia and Marisela, would regularly arrive after Guardado. *Id.* ¶ 152. Despite having the same role as Guardado and the same shift start time, they faced no consequences or threats of discipline or termination. *Id.* Kuk also isolated Guardado from her coworkers. *Id.* ¶ 155. He instructed them not to speak with her, and her coworkers thereafter excluded her from social events, like a Valentine's Day gathering. *Id.* ¶¶ 155–56. Guardado continues to work at the Piscataway facility for Kiss. *Id.* ¶ 11.

### B.    Procedural History

On or about October 23, 2024, Guardado filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 6. After exhausting her administrative remedies, the EEOC issued her a notice of right to sue and within ninety days, on January 21, 2025, Guardado filed suit before this Court. D.E. 1. Guardado initially sued Kiss, Kiss Products, Inc. (a related but distinct entity to Kiss), and Kuk. *Id.* After those defendants moved to dismiss, the undersigned administratively terminated the motion and instructed the parties to file pre-motion letters, consistent with her judicial preferences. D.E. 12. The parties complied, D.Es. 13 & 14, and this Court held a pre-motion conference on June 17, 2025, D.E. 17. At the pre-motion conference, the parties agreed that Guardado should file an amended complaint. D.E. 18. Guardado did so and abandoned her claims against Kiss Products, Inc. and named Eduardo as a John Doe defendant. *Compare* FAC, *with* D.E. 1; *see* D.E. 22-1 (redlining the differences between the Amended Complaint and D.E. 1).

In her Amended Complaint, Guardado brings eight causes of action: four causes of action against Kiss and four against all Defendants.[4]  Against Kiss, she brings Title VII claims for discrimination, hostile work environment, retaliation, and retaliatory hostile work environment. FAC ¶¶ 188–96.  Against all Defendants, Guardado brings LAD claims for discrimination, hostile work environment, retaliation, and retaliatory hostile work environment.  *Id.* ¶¶ 197–206.

After Guardado filed her Amended Complaint, the parties again filed pre-motion letters on a narrower set of issues.  D.Es. 24 & 25.  Upon review, the Court directed Defendants to move for dismissal and the parties' briefing followed.  Mot.; Opp'n; Reply.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Cnty. of Allegheny*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[4] Guardado brings claims for retaliatory hostile work environment, which is actionable under Title VII and the LAD, but she does not list this cause of action as a distinct count.  *See infra* Section III.A.2.

6

(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although there is no "'probability requirement,'" plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The allegations must amount to "more than labels and conclusions." *Twombly*, 550 U.S. at 555.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## III.    DISCUSSION

Defendants move to dismiss Guardado's LAD claims against Kuk and Guardado's retaliation and retaliatory hostile work environment claims against all Defendants. For the reasons below, the Court will **DENY** Defendants' Motion.

### A.    Retaliation and Retaliatory Hostile Work Environment

#### 1.    *Standard retaliation claim*

To plead a retaliation claim under Title VII, a plaintiff must allege that she (1) "engaged in a protected activity;" (2) "she suffered an adverse employment action;" and (3) "there was a causal connection between the participation in the protected activity and the adverse action." *Peifer v. Bd. of Probation and Parole*, 106 F.4th 270, 279 (3d Cir. 2024) (quoting *Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017)). The same standard that applies to Title VII retaliation claims applies to LAD retaliation claims. *See Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 545–46 (3d Cir. 2022) ("For claims of retaliation under Title VII and the NJLAD, courts apply the same . . . burden-shifting approach." (citing *Moore v. City of Philadelphia*, 461 F.3d 331,

7

342 (3d Cir. 2006)).   Guardado's Title VII and LAD retaliation claims therefore rise or fall together.   *See Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 287 (3d Cir. 2010) (applying the same standard to Title VII and LAD retaliation claims).

At issue here is only whether Guardado alleges facts that rise to the level of an adverse employment action.  The parties do not dispute that Guardado engaged in protected activity, nor do they dispute a causal connection exists between any purported adverse action and Guardado's participation in protected activity.  Mot. at 11–15.

To support a retaliation claim, a plaintiff must identify conduct that is "materially adverse" in that it is "harmful to the point that [it] could dissuade a reasonable worker from making or supporting a charge of discrimination."[5]  *Burlington*, 548 U.S. at 68.  Adverse actions can include, among other things, the assignment of undesirable work, interference with the employee's performance, and unwarranted or threatened discipline.  *See Baughman v. Marathon Petroleum Logistics Servs., LLC*, No. 24-287, 2025 WL 492003, at *7 (M.D. Pa. Feb. 13, 2025) (considering "reassignment to undesirable work tasks" an adverse employment action for purposes of retaliation); *Khalifeh v. Duff & Phelps Corp.*, 2017 WL 1003220, at *5 (D.N.J. Mar. 15, 2017) (considering unactuated threats of discipline an adverse employment action for purposes of retaliation).

Guardado alleges, Kuk imposed a time and attendance policy exclusively against her following her complaints about Eduardo's behavior.  She further alleges that Kuk threatened to terminate her and that Kuk assigned her—for the first time—tasks involving lifting heavy boxes.

---

[5] In *Muldrow v. City of St. Louis*, 601 U.S. 346, 357–58 (2024), the Supreme Court lowered the bar for what constitutes an adverse employment action, but only within the context of discrimination claims.  *See Peifer*, 106 F.4th at 275–76.  For retaliation claims, plaintiffs must still meet a "'significant' harm" bar.  *Id.* (quoting *Burlington N. and Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)).

These allegations constitute adverse employment actions. *See, e.g.*, *Kamara v. Wayfair, LLC*, No. 21-1400, 2022 WL 37356, at *3 (D.N.J. Jan. 3, 2022) (considering "baseless write-ups" an adverse employment action for purposes of retaliation); *see also Rivers v. New York Hous. Auth.*, 176 F. Supp. 3d 229, 255 (E.D.N.Y. 2016) ("Heavier workloads or more physically demanding tasks can constitute adverse employment actions."), *aff'd sub nom. Crenshaw v. New York City Hous. Auth.*, 697 F. App'x 726 (2d Cir. 2017). Guardado therefore adequately pleads that she suffered an adverse employment action for purposes of retaliation. The Court will accordingly **DENY** Defendants' Motion insofar as it seeks dismissal of Guardado's third and sixth causes of action.

### 2. *Retaliatory hostile work environment*

The Third Circuit recognizes, as a separate cause of action, a claim for retaliatory hostile work environment. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *abrogated on other grounds by Burlington*, 548 U.S. 53. To plead a claim for retaliatory hostile work environment, a plaintiff must plead that "(1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present." *Komis v. Sec'y of the U.S. Dep't of Lab.*, 918 F.3d 289, 293 (3d Cir. 2019).

Here, the parties dispute two issues: whether Guardado's Amended Complaint sufficiently invokes retaliatory hostile work environment as a separate and distinct cause of action and whether she alleges facts indicating that she suffered "severe or pervasive" discrimination. Mot. at 15–16. The answer to both is yes.

*First*, while Guardado does not include a distinct section for her retaliatory hostile work environment claim, she sufficiently puts Defendants on notice of the claim by alleging that:

9

(1) "[f]ollowing Guardado's complaints of sexual harassment and retaliation, Kiss created and maintained a hostile work environment for Guardado" and (2) "Defendants retaliated against Guardado after and as a result of her complaints of and opposition to Defendants' discriminatory conduct . . . by . . . fostering an increasingly hostile work environment in response to her opposition to and complaints of discrimination . . . ." FAC ¶¶ 158, 169. That is enough. *See, e.g.*, *Nazario v. Garland*, No. 22-1366, 2024 WL 69153, at *7 (M.D. Pa. Jan. 5, 2024) (holding that plaintiff's employer was on notice of a retaliatory hostile work environment claim despite plaintiff's failure to "specifically allege" a retaliatory hostile work environment claim (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)); *Prioli v. Cnty. of Ocean*, No. 18-256, 2021 WL 4473159, at *17 (D.N.J. Sept. 30, 2021) (noting plaintiffs proceeded with a retaliatory hostile work environment claim despite not having asserted a separate count for it). Guardado therefore adequately raises a retaliatory hostile work environment claim.

*Second*, Guardado's allegations satisfy the "severe or pervasive" standard for the purposes of retaliatory hostile work environment. Before evaluating Guardado's factual allegations, the Court first notes that there is an unsettled question regarding what standard to apply in the retaliatory hostile work environment context. In *Jensen*, the Third Circuit set forth a "severe or pervasive" standard for conduct giving rise to a retaliatory hostile work environment claim. 435 F.3d at 449. Later, however, the Supreme Court explained in *Burlington* that the "material adversity" standard should apply to causes of action based in retaliation. 548 U.S. at 68. Following *Burlington*, the Third Circuit then corroborated that the "material adversity" standard is broader than the "severe or pervasive" standard and is the proper one to reference in retaliation claims. *See Smith v. RB Distrib., Inc.*, 498 F. Supp. 3d 645, 662–64 (E.D Pa. 2020) (first citing *Moore*, 461 F.3d at 340–41; then citing *Komis*, 918 F.3d at 299). The Third Circuit has yet, however, to

10

definitively decide which standard applies in retaliatory hostile work environment claims and "what daylight, if any," exists between the standards. *Ruell v. McDonough*, No. 23-2487, 2023 WL 12235750, at *2 (E.D. Pa. Oct. 17, 2023).

It therefore remains unsettled whether the "material adversity" standard should apply in retaliatory hostile work environment claims, rather than the "usual hostile work environment framework." *See Komis*, 918 F.3d at 291, 293 (noting that the standard in *Burlington* potentially applies to retaliatory hostile work environment claims); *see also Ruell*, 2023 WL 12235750, at *2 (noting and collecting cases within the Third Circuit which have struggled to determine what standard to apply in the retaliatory hostile work environment context).

The parties here, however, assume that the "severe or pervasive" standard applies. *See* Mot. at 16; Opp'n at 23. Nonetheless, Guardado pleads a retaliatory hostile work environment even under the narrower standard assumed by the parties. The Court will therefore apply the "severe or pervasive" standard for purposes of Defendants' Motion. *See Foley v. Drexel Univ.*, No. 25-2103, 2025 WL 2346874, at *6 & n.2 (E.D. Pa. Aug. 13, 2025) (applying the "severe or pervasive" standard to a plaintiff's retaliatory hostile work environment claim because the parties did not dispute its application).

When analyzing whether allegations satisfy the "severe or pervasive" standard, courts must consider the "totality of the circumstances." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013). The standard is meant to capture conduct which, in isolation, might not be actionable for purposes of a retaliation claim, but may nevertheless evince retaliatory animus when considered alongside other actions as part of an "overall scenario." *Jensen*, 435 F.3d at 450. A pattern of actions may therefore give rise to a retaliatory hostile work environment claim even though each discrete action might not have been actionable in isolation. *Id.*

Here, Guardado alleges that her supervisors assigned her unfavorable work duties, threatened her with termination, forced her to continue working with Eduardo despite her prior complaints about his conduct, instructed other employees not to converse with her, excluded her from social events, and singled her out for disciplinary action. Some of these actions are sufficient to state a claim for retaliation, *see supra* Section III.A.1, and accordingly support a claim for retaliatory hostile work environment, *see Briggs v. Temple Univ.*, 339 F. Supp. 3d 466, 506 (E.D. Pa. 2018) (finding that the same actions that constituted a retaliation claim also supported a retaliatory hostile work environment claim). And allegations similar to Guardado's also established a retaliatory hostile work environment claim in *Ruell*. 2023 WL 12235750, at *3 (applying the "severe or pervasive" standard to the plaintiff's retaliatory hostile work environment claim). There, as here, the plaintiff complained that her supervisor excluded her from meetings and communications with other coworkers and assigned her unfavorable work duties. *Id.*

Given the early procedural posture of this case and the highly fact-specific nature of hostile work environment claims, Guardado therefore pleads a plausible claim for retaliatory hostile work environment. *See, e.g.*, *Smith*, 498 F. Supp. 3d at 664 (considering "persistent antagonism," discipline, and the failure to remedy another employee's sexual harassment as retaliation); *see also, e.g.*, *Burlington*, 548 U.S. at 69–70 (considering exclusion from a weekly training lunch and reassignment of duties to count as retaliation). The Court will therefore **DENY** Defendants' Motion to the extent it seeks the dismissal of Guardado's retaliatory hostile work environment claim.

12

**B.      Aiding and Abetting Liability**

Under the LAD, plaintiffs can hold individuals liable for aiding and abetting their employer's LAD violations. *Cicchetti v. Morris Cnty. Sheriffs Off.*, 194 N.J. 563, 594 (2008).[6] There are two forms of aiding and abetting liability under the LAD: active aiding and abetting and passive aiding and abetting. *Long v. Leggett  & Platt, Inc.*, No. 15-4907, 2017 WL 4284469, at *4 (D.N.J. Sept. 27, 2017).

To plead an individual defendant actively aided and abetted an LAD violation, a plaintiff must plead "(1) the employer whom the defendant aided performed a wrongful act causing injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation." *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015) (citing *Cicchetti*, 194 N.J. at 593).

To plead an individual defendant passively aided and abetted an LAD violation, a plaintiff must plead that the defendant had a duty to act against harassment and demonstrated deliberate indifference to the harassment. *Prioli*, 2021 WL 4473159, at *23. Under New Jersey law, supervisors have a duty to act against harassment. *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999) (citing *Taylor v. Metzger*, 152 N.J. 490, 503–04 (1998)). "This duty can be violated by deliberate indifference or affirmatively harassing acts. When supervisors flout this duty, they subject themselves and their employers to liability." *Id.* (citing *Judson v. Peoples Bank & Trust Co.*, 25 N.J. 17, 29–30 (1957)). Any inaction, must still, however, rise to "the level of providing substantial assistance or encouragement." *Hurley*, 174 F.3d at 126 (quoting *Failla v. City of Passaic*, 146 F.3d 149, 158 n.11 (3d Cir. 1998)).

---

[6] Individual liability is unavailable under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1).

To determine whether a supervisor provides substantial assistance or encouragement to a principal violator, the Third Circuit and the New Jersey Supreme Court apply five factors:  (1) the nature of the act encouraged; (2) the amount of assistance provided; (3) whether the supervisor was present during the time of the violation(s); (4) the supervisor's relationship with others; and (5) the supervisor's state of mind.  *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (citing Restatement (Second) of Torts § 876(b) (1976)); *Hurley*, 174 F.3d at 127.

Defendants make two principal arguments.  They first contend that Guardado fails to specifically plead a cause of action for aiding and abetting, and this failure mandates dismissal.  Mot. at 5–6.  They next contend that because Guardado fails to identify any "active and purposeful" conduct that Kuk engaged in, dismissal of Guardado's aiding and abetting liability claims is warranted.  *Id.* at 7–11.  As explained below, neither of Defendants' arguments are persuasive.

  1. *Guardado sufficiently raises aiding and abetting liability under the LAD*

Guardado's Amended Complaint clearly alleges that Kuk aided and abetted discriminatory, harassing, and retaliatory conduct.  *See, e.g.*, FAC ¶¶ 172–73, 176–77.  Guardado also brings her LAD claims for discrimination, sexual harassment, retaliation, and retaliatory hostile work environment against all Defendants and describes the basis for liability against each.  *See id.*  The Amended Complaint therefore places Defendants on fair notice of Guardado's aiding and abetting claims against Kuk and on the grounds upon which those claims rest.

  2. *Guardado pleads an LAD sex discrimination and hostile work environment claim against Kuk*

Guardado's Amended Complaint specifies that Kuk was her supervisor, that he was repeatedly notified about Eduardo's conduct, and his inaction as supervisor permitted Eduardo to continue sexually harassing her. Such allegations are sufficient. *See, e.g.*, *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 463–64 (D.N.J. 2009) (permitting LAD aiding and abetting claims

to survive summary judgment because a defendant supervisor received "clear notice of a violation of the LAD [and] declined to impose punishment"); *see also, e.g.*, *Velez v. Sunny Delight*, No. 15-1841, 2015 WL 5598801, at *6 (D.N.J. Sept. 21, 2015) (denying motion to dismiss aiding and abetting claims because allegations that a supervisor knew about sexual harassment and did nothing to remedy the situation raised a "colorable, non-frivolous claim of LAD aiding and abetting"); *Simonetti v. Broadridge Fin. Sols., Inc.*, No. 10-3903, 2012 WL 32931, at *11 (D.N.J. Jan. 5, 2012) (holding that a supervisor's failure to act can expose the supervisor to LAD liability).

Defendants cite several cases for the proposition that without any allegations of active encouragement or assistance, Guardado cannot maintain an aiding and liability claim against Kuk. Mot. at 8–10. The cases Defendants cite, however, do not control the inquiry *here*. For example, in *Newsome v. Administrative Office of the Courts of the State of New Jersey*, the Court dismissed a plaintiff's claim that a defendant supervisor aided and abetted sexual harassment because no harassment occurred after the defendant supervisor learned of the incidents. 103 F. Supp. 2d 807, 824 (D.N.J. 2000), *aff'd*, 51 F. App'x 76 (3d Cir. 2002). Accordingly, the *Newsome* plaintiff's claim failed to allege that the defendant supervisor "fail[ed] to prevent harassment of which he was or should have been aware." *Id.* In contrast, Guardado alleges that Kuk learned about Eduardo's sexual harassment of Guardado and not only failed to take any action to prevent or remedy the harassment, she was thereafter forced to continue working with Eduardo. And in *Gutierrez v. Lorenzo Food Group, Inc.*, the plaintiff there failed to show the supervisors were aware of their role in tortious activity. No. 24-9173, 2025 WL 2400031, at *7 (D.N.J. Aug. 19, 2025). In contrast here, Guardado alleges that human resources told her there was nothing they could do because Guardado's complaints had been shared with Kuk and it was therefore "out of [their] hands." FAC ¶ 88.

15

The Third Circuit's holding in *Hurley* instead appears to control the inquiry here. There, the Third Circuit vacated a district court's grant of summary judgment because a supervisor testified that he "did nothing to stop the harassment because the harassers should already have known better and he did not believe that he could do anything about it."[7] 174 F.3d at 128. The Third Circuit held that this testimony demonstrated the "kind of knowing inaction by a high-level employee with responsibility over [the plaintiff ] and her harassers [that] could, we think, rise to the level of substantial assistance." *Id.*

Here, Kuk was also a high-level employee. *See* Mot. at 10 (conceding "Kuk was highest in command as manager of the warehouse"). Eduardo sexually harassed Guardado in front of her supervisors.[8] The sexual nature of Eduardo's harassment escalated over time as reports were submitted to Kuk and he continued to do nothing. Human resources reported coming to an impasse on what to do because the matter was in Kuk's hands. Kuk also had a friendly relationship with Eduardo and supervisory authority over the warehouse employees. And according to Guardado's allegations, he was consistently kept appraised about Eduardo's sexual harassment, including the defacement of Guardado's car. These alleged facts suggest that Kuk may have provided substantial assistance to Eduardo's sexual harassment. *See Ciasulli*, 181 N.J. at 84 (citing Restatement (Second) of Torts § 876(b)).

Accepting Guardado's allegations as true, Guardado pleads an aiding and abetting liability claim against Kuk. The Court will therefore **DENY** Defendants' Motion to the extent it seeks the

---

[7] At the motion to dismiss stage, the Court will not hold it against Guardado that Kuk has not divulged his reasons for failing to act.

[8] Given Kuk's "day-to-day" supervision of Guardado and making all reasonable inferences in Guardado's favor, the Court can infer that Eduardo's sexual harassment was witnessed by Kuk. FAC ¶ 30.

16

dismissal of Guardado's LAD aiding and abetting liability claims against Kuk for discrimination and hostile work environment.

> 3.    *Guardado pleads an LAD retaliatory hostile work environment claim against Kuk*

Defendants argue that Guardado's retaliation-based claims against Kuk under the LAD's aiding and abetting provision fail because there is no principal retaliatory violation.  Mot. at 11. For the reasons previously discussed, Guardado adequately pleads both a traditional retaliation claim and a retaliatory hostile work environment claim. *See supra* Section III.A.

Defendants next argue that Guardado's retaliation-based claims against Kuk should be dismissed because Guardado alleges no facts indicating that Kuk aided and abetted any retaliatory conduct.  Mot. at 11.  But contrary to Defendants' contentions—and as explained above— Guardado alleges that after she complained about Eduardo's conduct, and after Eduardo's termination, Kuk exclusively enforced a time and attendance policy against her, threatened to terminate her, assigned her undesirable work, and instructed other employees not to converse with her.  *See supra* Section III.A.  These actions themselves constitute the principal grounds of Guardado's retaliation and retaliatory hostile work environment claims.

Because supervisors may be held responsible for aiding and abetting their own conduct, *Middlesex*, 2025 WL 2654995, at *3, Guardado has stated a cause of action under the LAD against Kuk for her retaliation-based claims.  Accordingly, the Court will **DENY** Defendants' Motion to the extent it seeks dismissal of Guardado's LAD claims against Kuk for retaliation and retaliatory hostile work environment.

## IV.     CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendants' Motion.  An appropriate Order accompanies this Opinion.


Dated: April 21, 2026

_Evelyn Padin_

Evelyn Padin, U.S.D.J.